Hubbard, J.
This case is important to the parties, from the amount at issue, and from the interesting character of the facts connected with it. On the settlement of the estate of a partnership, under the insolvent law of this Commonwealth, there remains, after paying the principal of the debts proved under the commission, a large surplus fund. This surplus results from the property of the leading partner, John Brown, one of the persons who was lost on board the steamer Lexington, which was burnt in Long Island Sound on the evening of January 13th 1840 ; and his widow and children are now seeking, in equity, to obtain such fund for their own benefit. And the question is, to whom does this surplus belong? Shall it revert to the estate of Brown, or shall it be applied, so far as may be required, to the payment of interest on the debts proved, from the date of the schedule to the time of the last order of the master, in which he has allowed the interest as claimed by the creditors ?
This is the first case which has ever come before the court, of a surplus under the insolvent law ;, and the question is presented by petitioners who necessarily awaken our sympathy But first cases are often governed by known and existing rules, and cases of sympathy, though they have been styled by Mr. Justice Buller “ the shipwrecks of the law,” are to be decided by the same just principles which are applicable to those of no peculiar interest, and in which no personal feelings are excited.
The case has been argued, as well upon the authorities which have arisen under the English statutes of bankruptcy, as upon the construction of our own statute. And it is evident that if this application were before the English court of chancery, the nrayer of the petitioners, with some modification, would be al-.owed. The case of Koch, ex parte, 1 Ves. & Beames, 342 *209 was one in which, there being a surplus, the creditors petitioned for an allowance of interest on their debts, subsequently to the date of the commission. Lord Eldon decided, that upon debts carrying interest it should be allowed, and on no others; on the ground that such was the rule in bankruptcy, which had not been departed from ; that where debts carried interest, it was a part of the contract, but in those cases where it was allowed in the nature of liquidated damages, it was no part of the contract; and he decreed accordingly, in conformity with prior cases.
But the decisions upon the English statutes, while they furnish helps to enable us to arrive at just conclusions, do not constitute legal precedents binding us in the construction of our own statute. Nor have we, on the subject of interest, conformed to their decisions in other cases ; we having adjudged it where they have refused it. With us, interest is allowed not only where the contract provides for it, but where the time is expired in which the contract was to be performed; on contracts for money or goods payable or deliverable on demand; after a specific demand made in cases where money has been unlawfully detained; and in various other instances. It is in lieu of damages, or rather is the liquidated damages for the injury the party has sustained by the breach of contract or the neglect of duty.
Thus the law stood in relation to interest, when the St. of 1838, c. 163, was enacted. That statute, § 6, directs the debtor, at the first meeting of the creditors, to deliver to his assignees a schedule of his creditors, and the amounts due to them, and the consideration of each debt; and subsequent directions are given for the proof of other claims, and for the amendment of the schedule. It is admitted that the statute contains no express provisions in regard to allowing interest' upon debts. The subject of interest is introduced incidentally, and for the purpose of producing equality among creditors. That it was designedly omitted, as was pressed in the argument, for the purpose of giving an advantage to the debtor in the amount of surplus after payment of the principal of the debts proved and allowed, cannot be successfully maintained. On the other *210 hand, the omission to mention interest in any other manner is a proof that no alteration in the law, in regard to it, was intended. The legislation was not directed to the subject of a surplus, and the statute contains only a simple provision, § 13, that “ if after the payment of all the debts proved, any surplus shall remain in the hands of the assignees, the same shall be paid or reconveyed to, or revest in, the debtor or his legal representatives.”
The word “ debts,” in the statute, is used in its broadest latitude, and it not only includes all accruing interest on contracts carrying interest on the face of them, but the interest which, by law, is allowed on all other claims and demands which are due and unpaid. As the act deals with insolvent estates, the language of it relates rather to the securing to the creditor a part of the principal of his debt, than to the making of provision for the payment of his interest. The object of the statute, so far as creditors are concerned, is an equal distribution of the effects of the insolvent; and for this purpose, as before remarked, the provision was introduced for the discount or rebate of interest, when no interest was due by the contract, till the time when it should become payable. This was not done to favor the debtor, because he, if honest, would obtain his discharge, whether the dividends on his estate might be large or small, and without regard to the manner in which the matter of interest should be adjusted among his creditors. And while the omission of the subject of allowing interest on debts affords an ingenious argument, when coupled with the English decisions, in favor of the insolvent, that the debts, as made up at the time of preparing the schedule, are the true sums to be paid by the assignees, and are not to be increased by the addition of interest ; "still we think the argument is wholly unsatisfactory : And we are of opinion that the more carefully the statute is examined, the more obvious it will appear that the exonerating of the debtor from the charge of interest on his debts was never in the contemplation of the framers of the statute ; and that the fixing of a time for rendering a schedule of his debts, was for the purpose of doing justice to all the creditors, by giving them the *211 same proportional rights, and not for the purpose of defining a period when the debtor should be relieved from the payment of interest, in case the funds should ultimately prove adequate for that purpose.
It is the policy of our law, to allow to a creditor interest on his demand after it becomes payable, although, by the tenor of the contract, there is no provision for the payment of interest The law is both equitable and just, and is the result of a long course of precedents ; and no good reason occurs to us, why the effects of an insolvent debtor, having increased in value in the hands of an assignee, and becoming sufficient to pay the debts with interest, shall be exempted from the operation of this law. He becomes in fact a solvent debtor, and his duties and obligations are the same with those of other solvent debtors.
In the case at bar, the creditors have been delayed in the payment of their dues; and why should the delay diminish the amount of them ? And yet they will be diminished, if they do not receive the interest as well as the principal; for when the interest once accrues, it becomes parcel of the debt. The case is hard for the petitioners, but the hardship arises from the misfortune of the debtors, and not from the conduct of the creditors.
But we consider the question, arising in this case, not only settled in principle, but virtually decided, in the case of Williams v. American Bank, 4 Met. 317. In that case, the same question arose between the administrator of a deceased debtor and his creditors. There was a surplus in the administrator’s hands, after making provision for the debts, as allowed by the commissioners of insolvency at the date of the commission; but if interest should be cast on the debts up to the date of the decree of distribution, the fund would be insufficient to pay them, with their accumulation. This additional interest was allowed by the judge of probate. The cause came before this court, on appeal from his decree, and, after deliberation, it was held that the allowance was right, and the decree of the court below was affirmed. We see no difference in principle between the two cases. The reasoning, which supports the one, equally sustains *212 the other. The injunction must therefore be dissolved, and the interest be paid by the assignees, on the several claims, agreeably 11 the terms of the master’s order, up to the time of the rendition of judgment in this court.